HERMON JERROD,         )
                             )
         Petitioner,        )
                             )
     vs.                  )         Case No. 4:05CV1061 CDP
                             )
CHUCK DWYER,         )
                             )
         Respondent.     )

## MEMORANDUM AND ORDER

After waiving his right to a jury trial against the advice of counsel, Hermon Jerrod was convicted of first degree murder, robbery in the first degree, and two counts of armed criminal action by the Circuit Court of the City of St. Louis, State of Missouri. He was sentenced to life imprisonment without the possibility of probation or parole for the murder and to three concurrent terms of thirty years imprisonment for the robbery and armed criminal action counts. Jerrod is incarcerated at the Southeast Correctional Center in Charleston, Missouri.

This matter is before the Court on his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Jerrod raises six grounds for relief. For the reasons stated below, petitioner's request for federal habeas corpus relief will be denied.

# FACTUAL BACKGROUND

The Missouri Court of Appeals summarized the testimony at petitioner's trial as follows:[1]

> Viewed in the light most favorable to the verdict, the evidence adduced at Movant's trial establishes that on December 29, 1996, Dwayne Harris ("Harris") was driving Antonio Terrell Clark ("Clark") to Clark's father's store, when Harris detoured and asked Clark to show him how to get to 4023 Lincoln. Unbeknownst to Clark, Harris had previously arranged to meet Shawanna Pickett ("Pickett") at that address to sell her heroin.

> Upon arriving at 4023 Lincoln, Harris got out of the car and met Pickett. Pickett asked Harris to come inside to meet the people who wanted to buy heroin. Clark, who was still unaware of the purpose of the detour, stayed in the car while Harris followed Pickett inside the house.

> Once inside, Movant and another armed man confronted Harris. Movant pulled a .9 millimeter gun, pointed it at Harris and demanded his money and drugs. When Harris tried to flee, Movant's accomplice drew his gun as well. Movant held his gun to Harris's head and then both Movant and the accomplice proceeded to beat Harris with their guns and fists. Movant and his accomplice ordered Harris to disrobe and, once he obliged, they robbed Harris of approximately $200 in cash, $500 in heroin and his personal property.

> After the beating and robbery, Movant left the house while his accomplice remained inside with his gun to Harris' back. Harris was able to look out the window and see Clark engaged in a struggle with

---

[1]In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." <u>Hall v. Luebbers</u>, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); <u>Lomholt v. Iowa</u>, 327 F.3d 748, 752 (8th Cir. 2003)).

Movant and a third man outside. Harris saw Movant shooting at Clark and then chasing after him until Clark jumped over a fence and fell wounded. An uninvolved neighbor who was outside washing her car during the incident witnessed the fatal shooting. Clark later died of gunshot wounds to the head and chest.

(Resp't Ex. I at 2-3.) Additional facts will be discussed as needed.

## PROCEDURAL BACKGROUND

Jerrod appealed his conviction and sentence before the Missouri Court of Appeals, arguing that the trial court erred in: 1) allowing into evidence the testimony of a police officer concerning an anonymous telephone call he received from an alleged eyewitness because the testimony was inadmissible hearsay; 2) overruling Jerrod's motions for judgment of acquittal because there was insufficient evidence to support a conviction of murder in the first degree; and 3) failing to *sua sponte* recuse itself prior to Jerrod's sentencing because remarks made by the trial judge at the sentencing exhibited extreme prejudice towards him. The Missouri Court of Appeals affirmed without published opinion on November 24, 1998.

Jerrod also filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, asserting numerous claims of ineffective assistance of counsel. Jerrod appealed the April 6, 2004 denial of his motion for post-conviction relief without an evidentiary hearing, asserting the following claims of ineffective assistance of trial counsel: 1) failure to object to the state's amendment of the Count

I charge of murder in the first degree to murder in the second degree - felony in the alternative; 2) failure to investigate and call as a witness Mr. Tezell Harris; and 3) failure to seek admittance into evidence of photographs of the area where the victim's body was found. The Missouri Court of Appeals denied relief in a per curiam unpublished opinion dated March 8, 2005.

## GROUNDS RAISED

Jerrod now seeks federal habeas corpus relief. Claiming violations of his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, he asserts the following grounds for relief:

1. His due process and confrontation rights were violated by the admission of police officer Campbell's testimony about an anonymous telephone call from an alleged eyewitness;

2. There was insufficient evidence to support his conviction of first degree murder;

3. His due process rights were violated when the trial court judge failed to *sua sponte* recuse herself prior to petitioner's sentencing because remarks she made during the sentencing hearing evidenced extreme prejudice towards petitioner;

4. Ineffective assistance of trial counsel for failing to object to the state's amendment of the murder in the first degree charge to murder in the second degree - felony murder in the alternative;

5. Ineffective assistance of trial counsel for failing to investigate and call as an alibi witness Mr. Tezell Harris; and

6.      Ineffective assistance of trial counsel for failing to introduce into evidence photographs of the area where the victim's body was found.

Respondent concedes that Jerrod has exhausted his state remedies for his present claims but contends all of these six grounds for relief fail on the merits.

DISCUSSION

Under section (d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus shall not be granted unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Shafer v. Bowersox, the Eighth Circuit articulated the standards for subsection (1) as follows:

> The "contrary to" clause is satisfied if a state court has arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrives at the opposite result.  A state court "unreasonably applies" clearly

established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." A case cannot be overturned merely because it incorrectly applies federal law, for the application must also be "unreasonable."

329 F.3d 637, 646-47 (8th Cir. 2003) (quoting Williams v. Taylor, 529 U.S. 362, 405, 411, 413 (2000)).

Under subsection (2), "a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lombolt, 327 F.3d at 752 (citing 28 U.S.C. § 2254(e)(1); Boyd v. Minnesota, 274 F.3d 497, 501 n.4 (8th Cir. 2001)).

The statute's deferential standard of review, however, applies to state court resolutions of law and fact only if the state court adjudicated the prisoner's claims on the merits. Taylor v. Bowersox, 329 F.3d 963, 967-68 (8th Cir. 2003) (citing 28 U.S.C. § 2254(d); Kenley v. Bowersox, 275 F.3d 709, 711 (8th Cir. 2002)). The Eighth Circuit has acknowledged that there are no "bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits." Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004). Rather, a court "must simply look at

what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court." Id.

Where a federal constitutional question is not adjudicated on its merits in state court proceedings, the pre-AEDPA standard of review should apply. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002). Under the pre-AEDPA standard, a habeas petitioner must demonstrate a " 'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987) (en banc)).

The six grounds asserted for habeas corpus relief will be reviewed under these standards.

### Ground 1: Inadmissible Hearsay Testimony

In Jerrod's first ground for relief, he asserts that his rights to due process, to a fair trial and to confront and cross-examine witnesses, as guaranteed by the Fifth, Sixth and Fourteenth Amendment rights, were violated. This alleged violation occurred when the court admitted the testimony of police officer Campbell concerning the anonymous telephone call he received from an alleged eyewitness. The anonymous caller described an altercation between the victim, Antonio Clark, and a third unidentified individual and identified Jerrod as Clark's killer. Jerrod

argues that police officer Campbell's testimony was inadmissible hearsay that violated his confrontation clause rights, was not subject to any hearsay exception, and that the admittance of this evidence prejudiced the court against him. According to Jerrod, other evidence in the trial was weak and testimony was self-contradictory such that the admittance of the hearsay statements, which directly implicated him, violated his right to cross-examination, due process and a fair trial.

The Missouri Court of Appeals summarily affirmed the trial court which overruled Jerrod's trial counsel's multiple objections to the admission of this testimony. The trial court ruled that defense counsel Wegner had opened the door to questions concerning the information provided to police by the anonymous caller. The relevant testimony from the trial was on redirect examination of Detective Ralph Campbell by prosecuting attorney Teer:

> Q [Mr. Teer]  The defense counsel also asked you with regard to the altercation that drew the defendant's attention outside. What specific information did you receive regarding that?
>
> MR. WEGNER:  Objection.  Hearsay.
>
> THE COURT:  Objection's noted and overruled.  It's an exception to the hearsay rule.
>
> THE WITNESS [Campbell]:  Well, we could go back to the scene investigation itself.  While we were conducting the scene investigation and not having any knowledge of how the thing had occurred at that point, we recovered a wristwatch laying on the

sidewalk or grassy area in front of 4023 Lincoln.  The band on the wristwatch was broken.  The weekend weather had been quite rainy.  The watch appeared to be laying on top of the wet grass and not wet.  We seized that prior to speaking to Dwayne Harris and getting his account as to what happened.

Q (By Mr. Teer)  And that would be the wristwatch that is contained in State's Exhibit 25?

A  Yes, sir.

Q  And again, you describe it as a watch that has been torn or at least broken off?

A  Yes.  It's a leather band, and the band has been pulled from the watch itself.

MR. WEGNER:  Objection.  Calls for a conclusion.

THE COURT:  Objection's noted and overruled.

THE WITNESS:  Mr. Teer, do you want me to finish?

MR. TEER:  Please.

THE WITNESS:  As the investigation continued, it still being unaccountable for the third subject, we believed or our conclusion was that something had to occur in front of that house.

MR. WEGNER:  Okay.  I object.  He even said this is all conclusion.

THE COURT:  I'm going to overrule the objection.  The man has been on the police force for some 24, going on 25 years.  Many of the things they do are based upon conclusions based upon prior experience.  You may continue your answer, sir.

THE WITNESS:  We concluded that something happened in front of the house that would have gotten Jerrod's attention and caused him to go outside.  Mr. Harris could not tell us what happened outside.  All he referred to is there was a commotion going on prior to Herman Jerrod running outside the door.

Later in January I received an anonymous phone call from a caller.  The caller indicated that he had observed the incident but he feared retaliation from Herman Jerrod and his associates.  He would tell me what he had observed, but he would not come forward and identify himself, nor would he testify in a trial.

And it was during the conversation with this anonymous caller that he indicated to me that he observed Dwayne Harris, who he did not know, and the victim, Antonio Clark, who he did not know, pull in front of the house at 4023 Lincoln.  The caller indicated that he observed Dwayne Harris exit the vehicle, approach a black female and a black male who was standing out front.  He observed the black female and Harris enter the house and the second subject at this point remains outside.

After Harris and the female enter the house, the caller indicates that the subject who was previously standing outside now approached Antonio Clark who was seated in the passenger's seat of the vehicle.  There was some words exchanged.  The caller observed this third person, as it turns out, begin to struggle and pull Antonio Clark from the front seat of the vehicle.  And at that point a fight ensues, where both this third-party and the victim Clark fall to the sidewalk.

The caller indicated as both the unknown subject and the victim got up, Herman Jerrod came running from the house, and at this point Antonio Clark began running down the streets.  The caller indicated that he saw Herman Jerrod fire one shot, causing Antonio Clark to fall to the sidewalk.  And after Antonio Clark fell, he observed Herman Jerrod run up on the victim and fire one shot into the back of the head.

He observed the subject who was – or lookout, so to speak,

jump a fence and run through a yard. He observed Herman Jerrod run back to 4023 Lincoln, jump the fence, and run back inside.

Q (By Mr. Teer) And again, that is the information that you had received this response to defense counsel's question regarding what had been the altercation on the exterior of that residence?

MR. WEGNER: Your Honor, I'm going to object. This concept of altercation was brought up on redirect by the State, without anything from the defense.

THE COURT: Actually, Mr. Wegner, I believe you challenged this witness with regard to whether or not any mention of an altercation was made in the police report.

MR. WEGNER: After it was brought up on redirect, your Honor.

THE COURT: But it was your challenge that led into this particular line of questioning. So your objection is noted and overruled.

Do you have anything additional of this witness, Mr. Teer?

(Tr. at 85-89.)

Defense counsel restated his objection after lunch break:

MR. WEGNER: I had the court reporter at the luncheon break just review my first set of cross questions, and it's still my position that I did not say anything about a third person other than that they were there at the back door at the end of the incident and never brought up anything about an altercation. And it would be my request that my objections based on hearsay and beyond the scope again be addressed and that all that line of questioning by Mr. Teer of the detective is improper and should not be used in the consideration of this case at the conclusion.

MR. TEER:  Judge, I would have the Court remember the evidence as she has heard it and as it was presented.  I believe that there was a sufficient challenge by the defense in that area and an inquiry such that it was proper for me to inquire.

THE COURT:  The objection is still overruled.

(Tr. at 101.)

The Missouri Court of Appeals found the first three grounds raised in Jerrod's petition for habeas corpus to be "without merit."  The appellate court issued no published or memorandum opinion when it affirmed the trial court on these three issues.  The court's "without merit" conclusion implies that the court adjudicated Jerrod's claims on the merits.  However, without any discussion by the court, it is impossible to determine for sure if the federal constitutional claims were considered and rejected on the merits.  Therefore I will assume the appellate court did not reach the merits and will apply the pre-AEDPA standard of review for the analysis of Jerrod's first three grounds of relief.  Under this standard, a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]."  Robinson v. Crist, 278 F.3d at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987) (en banc)).

According to the Supreme Court, "it is not the province of a federal habeas

court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam)).

Although the admissibility of evidence at a state trial is a matter of state law and ordinarily will not form the basis for federal habeas relief, a federal court may grant habeas relief when a state court's evidentiary ruling "infringes upon a specific federal constitutional right or is so grossly or conspicuously prejudicial that it fatally infected the trial and denied the defendant the fundamental fairness that is the essence of due process." Maynard v. Lockhart, 981 F.2d 981, 986 (8th Cir. 1992) (quoting Berrisford v. Wood, 826 F.2d 747, 749 (8th Cir. 1987)); see also, Turner v. Armontrout, 845 F.2d 165 (8th Cir. 1988). To meet this standard, petitioner "must show a reasonable probability that the error affected the trial's outcome." Troupe v. Groose, 72 F.3d 75, 76 (8th Cir. 1995). "The habeas petitioner must establish an error which demonstrates a violation of due process by a burden much greater than that required on direct appeal and even greater than the showing of plain error." Mendoza v. Leapley, 5 F.3d 341, 342 (8th Cir. 1993).

A conviction will not be reversed on the basis of erroneously admitted

hearsay testimony if the error was harmless.  U.S. v. Byler, 98 F.3d 391, 394 (8th Cir. 1996).  To determine if an evidentiary error was harmless, one must review the entire record. U.S. v. Mitchell, 31 F.3d 628, 632 (8th Cir. 1994).  The error is harmless if a court finds "that no substantial rights of the defendant were affected, and that the error had no, or only slight, influence on the verdict."  Id. (citing U.S. v. DeAngelo, 13 F.3d 1228, 1233 (8th Cir. 1994); Fed.R.Crim.P. 52(a)).

Even if the statements of the anonymous caller are hearsay not within an exception and even if defense counsel did not open the door to such testimony, I find that its admission at trial was harmless.  The testimony of Dwayne Harris was sufficient evidence for the trial court to find Jerrod guilty of murder, robbery and armed criminal action.  There is no indication that the admission of the caller's statement influenced the outcome of this court-tried case.  Jerrod has not demonstrated with reasonable probability that the admission of such evidence affected the outcome of the trial or that the verdict would have been different absent its admission.  Accordingly, Ground 1 of Jerrod's habeas petition is denied.

<u>Ground 2: Sufficiency of the Evidence to Support First Degree Murder</u>

In his second ground for relief, Jerrod asserts that the trial court violated his rights under the Fifth and Fourteenth Amendments when it overruled his motion for acquittal at the close of the State's case because there was insufficient evidence to support a conviction of first degree murder.  Jerrod alleges that the eyewitness testimony of Dwayne Harris was so inconsistent and contradictory that it should be disregarded under the doctrine of "destructive contradictions."  This claim was rejected by the Missouri Court of Appeals on direct appeal.

In reviewing a claim of insufficiency of evidence a federal habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).

Under <u>Jackson</u>, the trier of fact – the trial court – has the responsibility to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution."  <u>Jackson</u>, 443 U.S. at 319.

According to Missouri statute, "[a] person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter."  Mo. Rev. Stat. § 565.020 (1999).  As a result, the elements for first degree murder include (1) knowingly (2) causing the death of another person (3) after deliberation upon the matter.  State v. Carter, 71 S.W.3d 267, 272 (Mo.App. S.D. 2002) (citing State v. Salazar, 978 S.W.2d 469, 470 (Mo. App. S.D. 1998)).

I conclude that the state court's finding that the evidence supported a conviction for murder in the first degree is not an unreasonable determination of the facts, and is fully supported by the evidence.  Dwayne Harris testified that Jerrod ran out of the house with a gun, struggled with the victim, and then shot at and chased the victim down the street.  The evidence unequivocally demonstrated that the victim, Antonio Clark, was shot twice: once in the back and once in the head. The testimony from a neighbor down the street, Janet Bernaugh, confirmed that the victim was shot once while running away and then a second time at close range in the head.  The second shot to the head exhibits clear deliberation on the part of the killer.

A rational factfinder could conclude that the essential elements of first degree murder were proven beyond a reasonable doubt.  Accordingly, petitioner's second

ground for habeas relief is denied.

Ground 3: Statements of Trial Court Judge at Sentencing

Jerrod's third ground for habeas relief alleges that his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments were violated when the trial court judge failed to *sua sponte* recuse herself prior to his sentencing. Jerrod contends that comments made by the judge during the sentencing hearing evidenced such extreme prejudice toward him that a reasonable person would conclude that the court harbored personal animosity against Jerrod and therefore could not be impartial. This allegation was rejected on direct appeal by the Missouri Court of Appeals.

After sentencing Jerrod to life imprisonment without probation or parole, Jerrod's father interrupted the sentencing hearing. The allegedly prejudicial remarks from trial court judge Evelyn M. Baker were as follows:

> THE COURT:   Sir?
>
> MR. WEGNER: It's [Jerrod's] father.
>
> MR. JERROD [Senior]: May I approach the bench, ma'am?
>
> THE COURT: Yes, you may, sir.
>
> MR. JERROD: Your Honor, my name is Herman Jerrod Sr. What I want to say, I don't know the procedures of trial or nothing like that. But as far as investigating an attorney and all of that, this is my son, and everybody in my neighborhood knows that he hasn't killed anybody, number one.

And number two, he gets a public defender, a lawyer, that states that he does not want to talk to me or my wife. We've called him. I've called him. She's called him. He leave word he wants nothing – he has nothing to say to us. And even left word with peoples in his office that he's representing my son and not me.

THE COURT: That's correct, sir. He was representing your son, and because of attorney client privilege, he could not discuss any conversations he had with your son with you.

MR. JERROD: No, I didn't want to discuss that. I would just – I called him one time and said do he know anybody that would come forward or anything to let him know. Now how can I let him know if he doesn't want to talk to me?

THE COURT: What are you trying to say, sir?

MR. WEGNER: I believe I had asked him in the past if – since he lived in the neighborhood where this happened, that if he had any addresses, names, phone numbers, to apply that. And what Mr. Jerrod is now saying is I would not accept his phone calls, thus he could not give that information if he had any. Correct?

MR. JERROD: That's somewhat.

THE COURT: Did you have names and addresses of people?

MR. JERROD: I don't know if they'll come forward, but I can see what they'll come forward. I'm just talking about some peoples that live in the neighborhood that said that they know. That it's peoples that said that they couldn't identify – they didn't know who committed the murder, but they're positive that he didn't. You understand me?

THE COURT: Sir, do you have any idea what your son's record is like?

MR. JERROD: Yes, ma'am.

THE COURT: What's it like, sir?

MR. JERROD: It's pretty bad. I could tell you that. He's been accused of a few things.

THE COURT: A few things?

MR. JERROD: Yes, ma'am.

THE COURT: How about murder in September of '94. How about assault first in October of '94. How about murder in November of '94. I'm just going to deal with the serious ones. How about two counts of assault first degree in May of '95. How about murder in August of '95. How about murder again in August of '95, as well as assault in the first degree and two counts of armed criminal action. How about August of 1995, three counts of assault in the first degree, three counts of armed criminal action, and three counts of unlawful use of a weapon. And we have a conviction in September of '95 of unlawful use of a weapon, which he got four years in the Department of Corrections. Then we get December of '95, another unlawful use of a weapon, which he got four years, apparently running concurrently with the one he picked up earlier. Assault in the second degree in May of '96. Possession in August of '96, which he served time. Possession again in November of '96, eight counts of assault in the first degree and two counts of armed criminal action. That's November of '96. December of '96, assault in the first degree and armed criminal action.

And now the present offense which took place on December the 30th of 1996, in which he was arrested and charged with murder in the first degree, robbery in the first degree, armed criminal action, assault in the first degree, and armed criminal action. Now the young man that died in this had no record. He was a good student and he was a good kid. And he was not involved in the trade or the types of things that your son was involved in.

MR. JERROD: The only thing that I've said that about the peoples coming and speaking in the neighborhood that I don't know what all his past was, but a lot of the stuff you're reading off is new to me. But what I'm talking about is I thought he was here charged with this incident here. That's what I was talking about.

THE COURT: You know when it comes to sentencing, a person's past plays a part. And your son has a past that is racked with violence and assaultive behavior, with a history of witnesses being intimidated so they are afraid to come forth.

THE DEFENDANT: Your Honor –

THE COURT: You might not want to believe that this is the child that you and your wife gave life to, but there he is. With the covers ripped back, and what you see there is a disgusting piece of humanity. Your son's entire adult record – and this young man is only what? Twenty years old?

MR. JERROD: Twenty.

THE COURT: And he has this type of record, at the age of 20. Unfortunately the young man that got killed on December the 30th is never gonna have a chance to see 20. He was a young innocent boy who was just sitting in a car waiting for someone to come out of a house when he was brutally murdered. And according to the witnesses, your son did it.

Now if there were a thousand people out there who came forward and said he was innocent, they would have come forward. He would have had that information, and he could have conveyed it to his attorney. If you had that information, you could have given it to your son, and he could have conveyed it to his attorney. No parent likes to admit that their child is a brutal and vicious murderer who has absolutely no respect for human life. But unfortunately, that is what your son is.

Now maybe someday he'll turn into a human being, because he's gonna have a lot of time to decide whether or not he is going to become a human being. But right now he is like a virile dog, a vicious animal who needs to be restrained. When you have this much smoke, you're gonna have a fire. And this is for a young man who is only 20 years old. A lot of smoke here, sir. A lot of smoke.

MR. JERROD: I had another son that was killed at 16. He was just 16 years old, and he got killed and got murdered right in my block. I was at home asleep. And somebody called me and I get down there, somebody done shot him several times, going to give his auntie a light. So they never – there's a lot of speculation who did what and all that there, but never nobody was brought to trial on it.

THE COURT: Did it ever occur to you maybe they killed the wrong son, given this one's record?

MR. JERROD: Well, I don't know what, but I know that –

THE COURT: See, there's a family out there, and they get a call or someone comes by and says your boy's been shot, your boy's been murdered. And that was a boy who had never been in any trouble in his entire life.

MR. JERROD: Well, that's the same thing I'm saying about my other son. He was a genius in school and everything there. He didn't have no record of doing nothing to nobody.

THE COURT: Like I said, maybe they killed the wrong son.

(Tr. at 215-21.)

There is no doubt that these are extremely harsh statements. However, for a judge to be disqualified on the basis of personal bias and prejudice, the bias "must stem from an extrajudicial source and result in an opinion on the merits on some

basis other than what the judge learned from his participation in the case." U.S. v. Grinnell Corp., 384 U.S. 563, 583 (1966) (citing Berger v. U.S., 255 U.S. 22, 31(1921)). More recently, the Court explained this 'extrajudicial source' concept: "The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task." Liteky v. U.S., 510 U.S. 540, 550-551 (1994).

There is no indication that the comments made by the trial judge in this case derive from any extrajudicial source. The judge herself indicated that the source of her comments was Jerrod's criminal record and history. Nor do the comments reveal such a high degree of antagonism to make fair judgment impossible. The comments were an attempt by the judge to reveal to Jerrod's father the truth of his son's past. "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger" are not enough to establish bias or prejudice. Id. at 555-56. Jerrod has failed to establish a reasonable probability that the alleged bias exhibited by the trial court judge affected the outcome of the trial or changed the case's verdict. The

statements by the trial court judge stem from the evidence adduced at trial and evidence properly considered in the sentencing phase of the case. Accordingly, Jerrod's third ground for habeas corpus relief is denied.

Grounds 4, 5 and 6: Rule 29.15 Evidentiary Hearing /
Ineffective Assistance of Trial Counsel

In his last three grounds for relief, Jerrod challenges the denial of his Rule 29.15 motion for post-conviction relief without an evidentiary hearing. Jerrod asserts that he was entitled to such a hearing because of his trial counsel's ineffective assistance and that the denial of the hearing violated his Fifth, Sixth and Fourteenth Amendment rights. Specifically, his allegations of ineffective assistance of counsel include: counsel's failure to object to the state's amendment of the charge of murder in the first degree to murder in the second degree - felony murder in the alternative, counsel's failure to investigate and call as an alibi witness Tezell Harris, and counsel's failure to introduce into evidence photographs of the area where the victim's body was found.

Claims alleging error in post-conviction proceedings are not cognizable grounds for federal habeas relief. See Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990) ("Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a

state post-conviction proceeding does not raise a constitutional issue cognizable in a

federal habeas petition.")

To the extent Jerrod is attempting to assert the underlying ineffective

assistance of counsel claims, the Missouri Court of Appeals rejected these claims on

appeal:

> Hermon Jerrod, Jr. ("Movant") appeals from the judgment of the from the [sic] Circuit Court of the City of St. Louis denying his Rule 29.15 motion for post-conviction relief without an evidentiary hearing. In his appeal, Movant argues that the motion court clearly erred when it failed to find that his attorney rendered ineffective assistance at his bench trial on charges of first degree murder, first degree robbery, first degree assault and armed criminal action. Movant specifically contends that his trial counsel failed to: (1) object to the State's amendment of the murder in the first degree charge in Count 1 to murder in the second degree - felony in the alternative; (2) investigate and call as a witness Mr. Tezell Harris; and (3) seek to have admitted into evidence photographs of the area where Mr. Antonio Clark's body had been found. Because we hold that the determination of the motion court was not clearly erroneous, we affirm.
>
> ...
>
> *Standard of Review*
>
> Our review of the motion court's denial of post-conviction relief is limited to a determination of whether the motion court clearly erred in finding that counsel was not effective. Helmig v. State, 42 S.W.3d 658, 665-66 (Mo.App.E.D. 2001). To prove ineffective assistance of counsel, Movant must demonstrate that (1) counsel's performance failed to conform to the degree of skill, care and diligence of a reasonably competent attorney and (2) Movant was prejudiced by counsel's poor performance. Strickland v. Washington, 466 U.S. 668

(1984); <u>Deck v. State</u>, 68 S.W.3d 418, 425 (Mo. banc 2002).

Satisfaction of the first prong of the <u>Strickland</u> test requires Movant to overcome a presumption that the challenged action constituted sound trial strategy.  <u>State v. Hall</u>, 982 S.W.2d 675, 680 (Mo. banc 1998).  The second <u>Strickland</u> prong necessitates that Movant "show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."  <u>Id.</u>

*Discussion*

I.  *Failure to Object to Amendment of Count I*

Movant alleges that trial counsel was ineffective because he failed to object to the State's amendment of the murder in the first degree charge in Count I to murder in the second degree - felony in the alternative.  Specifically, Movant alleges he was prejudiced because he was deprived of the defense that even if Movant had robbed Harris earlier in the day, he did not shoot Clark.

The original indictment, dated July 22, 1997, charged Movant and his accomplice with murder in the first degree, robbery in the first degree, two counts of assault in the first degree and three counts of armed criminal action.  On January 20, 1998, the first day of trial, the State requested leave to file a substitute information in lieu of indictment which added allegations that Movant was a prior and persistent offender.  The information also modified Count I to clarify that the shooting took place "as a result of the perpetration of the class A felony of robbery in the first degree ...."  The next day, the State again filed a substitute information adding that "defendant is further given notice that should the state submit murder in the second degree - felony ... it will be based on the perpetration of the class A felony of robbery first degree ...."

Rule 23.08 allows information to be amended or substituted for an indictment any time before the verdict or finding as long as: (a) an additional or different offense is not charged; and (b) the defendant

does not suffer prejudice. Mo.R.Crim.P. 23.08. Under this rule, the test for prejudice is "whether a defendant's evidence would be equally applicable, and his defense equally available, after the amendment." State v. Henderson, 824 S.W.2d 445, 451 (Mo.App.E.D. 1991). Although Movant concedes that the State's amendments did not improperly charge additional or different offenses because felony murder is a lesser included offense of murder in the first degree and a defendant can always be convicted of a lesser included offense of an offense charged in the indictment or information, he suggests that he was unfairly surprised and prejudiced by this amendment.

Movant's claims that he was without sufficient notice of the amendment and that he was ultimately prejudiced by the amendment are specifically refuted by the record. At the beginning of trial, trial counsel acknowledged that he was on notice that his client would be charged with felony murder. While on the record and in the presence of his client, trial counsel stated "I've talked to my client in the past regarding the possibility of felony murder and what that entails, and we understand that legal concept and what it means, so we aren't surprised" that it was added. Accordingly, the record indicates that Movant was fully informed of the charges against him before the commencement of trial and trial counsel was prepared and did defend against the alternative charge. Furthermore, the record plainly refutes any allegation that Movant was prejudiced by trial counsel's failure to object to the amendment in that Movant was ultimately convicted of first degree murder and not of the amended charges he disputes. Point denied.

## II.    Failure to Call Witness

In his second point, Movant alleges that trial counsel was ineffective because he failed to investigate and call Mr. Tezell Harris to testify that Movant was inside the residence at 4022 Lincoln on December 19, 1996 around 2:45 p.m. and thus not in front of 4007 Lincoln when the shooting occurred. Movant asserts that there is a reasonable probability that the outcome of his trial would have been different had trial counsel presented Tezell Harris's testimony.

Notably, at the sentencing hearing, the trial court examined Movant regarding the effectiveness of assistance he received from trial counsel. Specifically, the court asked Movant if trial counsel contacted the witnesses Movant provided. In response, Movant said that trial counsel did not. When asked for his response to Movant's allegation, trial counsel said "We did contact the female he indicated, and I talked to [Movant] regarding avenues of defense of possible witnesses." This limited exchange led the motion court to conclude that Movant provided trial counsel with only one witness, a female, and "counsel contacted the only witness whose name was provided...."

While we do not necessarily glean from this exchange that this female was the only witness whose name was provided, or more specifically that the Movant never provided trial counsel with the name Tezell Harris, such a determination is unnecessary. Trial counsel's response to the trial court's inquiry illustrates that his decision not to call Tezell Harris, or any other witnesses for that matter, was a strategic decision. Following investigation, strategic decisions regarding the calling of witnesses are virtually unchallengeable. Lyons v. State, 39 S.W.3d 32, 39 (Mo.banc 2001). Point denied.

## III.    *Failure to Have Evidence Admitted*

In his third point, Movant alleges that trial counsel was ineffective because counsel did not seek to have admitted into evidence photographs of the area where Clark's body was found. Specifically, Movant claims that he was prejudiced and suggests that introduction of these photographs could have impeached Harris's testimony at trial in that the photographs would have proved that Harris could not have seen Movant fatally shoot Clark in front of 4007 Lincoln.

Review of the record indicates that Harris never specifically testified as to what happened in front of 4007 Lincoln. To the contrary, Harris merely testified that he looked out of the east side window of 4023 Lincoln and saw Movant and Clark "wrassling," Movant shooting and Clark running away. Accordingly, even if counsel had introduced into evidence additional neighborhood

photographs or photographs of Clark's body in front of 4007 Lincoln, they would not have contradicted Harris's statements because Harris never claimed to see any occurrences outside of 4007 Lincoln.

Moreover, counsel's decision whether or not to present certain evidence is a matter of trial strategy. Payne v. State, 21 S.W.3d 843, 845 (Mo.App.E.D. 1999); State v. Kenley, 952 S.W.2d 250, 266 (Mo. banc 1997). A movant must overcome the strong presumption that the challenged action is sound trial strategy. Kates v. State, 79 S.W.3d 922, 926-27 (Mo.App.S.D. 2002).

Movant concedes that trial counsel used several photographs of 4023 Lincoln to argue that Harris could not have seen what occurred at 4007 Lincoln. Accordingly, additional photographs to belabor this same point would have been cumulative. Failure to present cumulative evidence does not constitute ineffective assistance of counsel. State v. Ferguson, 20 S.W.3d 485, 509 (Mo.banc 2000). Point denied.

(Resp't Ex. I at 2-8.)

As opposed to Jerrod's first three grounds for relief, the Missouri Court of Appeals thoroughly discussed the merits of the underlying ineffective assistance of counsel claims, therefore the AEDPA deferential standard of review applies. For federal habeas relief, Jerrod must establish that the state court adjudication was contrary to, or involved an unreasonable application of, clearly established Federal law, or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

To state a claim for ineffective assistance of counsel, petitioner must establish

that his counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 700 (1984). To decide whether counsel's performance was constitutionally deficient, the inquiry must be whether, in light of all the circumstances, the identified acts or omissions fell outside the range of professionally competent assistance. Id. at 690. In determining whether counsel's conduct was objectively reasonable, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To establish the requisite degree of prejudice, petitioner must demonstrate that the decision reached would likely have been different absent counsel's error. Id. at 694; Griffin v. Delo, 33 F.3d 895, 900 (8th Cir. 1994). Additionally, only claims of ineffectiveness alleging that counsel's error deprived the petitioner of a fair trial are cognizable. Strickland, 466 U.S. at 685-87.

Jerrod has failed to demonstrate that the outcome of the trial would have been different but for the three alleged errors that his trial counsel committed. As for Ground 4, the state's amendment of the murder in the first degree charge had no impact on the trial outcome because Jerrod was convicted of first degree murder and not the amended charges. Jerrod can demonstrate no prejudice that resulted from the amendment of the charges.

As quoted above, the Missouri Court of Appeals found Jerrod's fifth ground

to be meritless because the record indicates that trial counsel's decisions regarding

the calling of witnesses were part of trial strategy.  The Circuit Court of the City of

St. Louis also found this ground meritless, but for different reasons:

> Movant's third claim is that defense counsel was ineffective for
> failing to call Mr. Tezell Harris, who allegedly would have testified
> that he saw movant at 4023 Lincoln at the time of the shooting and thus
> movant could not have shot Mr. Clark in front of 4005 Lincoln.
> Movant alleges he provided the name of Mr. Harris to his attorney and
> asked his attorney to contact anybody else who was at 4022 Lincoln at
> the time of the shooting.  Movant acknowledges that at the time of
> sentencing defense counsel advised the Court that he had contacted the
> only person whose name was provided by movant.  The record reflects
> that movant told Detective Campbell he had been at
> his father's house in the 4000 block of Kennerly.

> In order to be entitled to relief on the ground that counsel failed
> to call witnesses movant must identify who the witnesses were,
> whether or not counsel was informed of their existence, establish that
> the witnesses could have been located through reasonable
> investigation, would have testified if called and their testimony would
> have provided a viable defense.  State v. Dudley, 819 S.W.2d 51, 56
> (Mo. App. 1991); Thompson v. State, 779 S.W.2d 666 (Mo. App.
> 1989); Smith v. State, 774 S.W.2d 562, 564 [4] (Mo. App. 1989);
> State v. Martin, 775 S.W.2d 196 (Mo. App. 1989).

> The Court finds that this allegation is without merit because the
> record reflects that defense counsel contacted the only witness whose
> name was provided to him, and the proposed testimony also appears to
> be inconsistent with what movant told Detective Campbell.

(Resp't Ex. F at 34-35.)  Both of the state court findings are entitled to deference.

Whether because counsel's decision was trial strategy or because such testimony

would have conflicted with the testimony of Detective Campbell, there is no indication trial counsel's actions were not within the range of reasonable professional assistance.

As for the defense counsel's lack of introduction of photos of the scene of the shooting, Jerrod's Ground 6, such photos were introduced into evidence by the prosecution and used by the defense counsel as needed. The finding of the state court that additional photos would only be cumulative is entitled to deference. It is not contrary to federal law or an unreasonable interpretation of the facts.

The appellate court's decision is not an unreasonable application of the Strickland standard. I will deny habeas relief on Grounds 4, 5, and 6 of the petition.

<u>Certificate of Appealability</u>

Since the petitioner cannot make a substantial showing of a denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (substantial showing requires that "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.").

Accordingly,

**IT IS HEREBY ORDERED** that petition of Hermon Jerrod for writ of habeas corpus [#2] pursuant to 28 U.S.C. § 2254 is denied.

**IT IS FURTHER ORDERED** that the petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a certificate of appealability.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 7th day of March, 2006.